21-5
*United States v. Gramins*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of October, two thousand twenty-two.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> BARRINGTON D. PARKER,
> EUNICE C. LEE,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

v. 21-5

MICHAEL GRAMINS,

> *Defendant-Appellant*,

ROSS SHAPIRO, TYLER PETERS,

> *Defendants*.

---

For Appellee:      DAVID E. NOVICK (Heather L. Cherry, Jonathan N. Francis & Sandra S. Glover, *on the brief*), Assistant United States Attorneys *for* Leonard C. Boyle, Acting United States Attorney for the District of Connecticut

1

| | |
|---|---|
| For Defendant-Appellant: | KANNON K. SHANMUGAM (Melina M. Meneguin Layerenza, Aimee W. Brown & Matteo Godi, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, D.C. & New York, N.Y. |
| | Marc L. Mukasey, *on the brief*, Mukasey Frenchman LLP, New York, N.Y. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Chatigny, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Michael Gramins ("Gramins") was convicted by a jury of one count of conspiracy to commit wire fraud and securities fraud in violation of 18 U.S.C. § 371.[1] After trial, the district court denied Gramins's motions for acquittal and to dismiss the indictment but granted Gramins's motion for a new trial under Federal Rule of Criminal Procedure 33. *See United States v. Shapiro*, 2018 WL 2694440 (D. Conn. June 5, 2018). We reversed and remanded the case to the district court with instructions to proceed to sentencing. *See United States v. Gramins*, 939 F.3d 429, 434 (2d Cir. 2019) ("*Gramins I*"). On remand, the district court declined to reconsider its rulings and, again, denied Gramins's motions for acquittal and to dismiss. Appellant's App'x 1028–49. On December 17, 2020, the district court issued its judgment sentencing Gramins to two years of probation, with the first six months to be spent in home confinement.

---

[1] The indictment also charged Gramins and his codefendants, Ross Shapiro and Tyler Peters, with two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5, and six counts of wire fraud in violation of 18 U.S.C. § 1343. The jury convicted Gramins on the conspiracy count, failed to reach a verdict on one count of securities fraud and one count of wire fraud, and acquitted him on all remaining counts. The jury acquitted Shapiro on all counts, except for the conspiracy charge, on which it failed to reach a verdict. The jury acquitted Peters on all counts.

2

*Id.* at 1146. Gramins now submits this second appeal, which challenges the sufficiency of the government's evidence and the district court's jury instructions. We described the facts and the procedural history of this case at length in *Gramins I*, 939 F.3d at 434–43. We assume the parties' familiarity with that factual background, the procedural history, and the issues on appeal, which we discuss only as necessary to explain our decision to affirm.

### I. Sufficiency of the Evidence

Gramins challenges the sufficiency of the government's evidence on two essential elements of the crime for which he was convicted: the materiality of his misrepresentations and his mental state.[2] "A defendant bears a heavy burden when he tries to overturn a jury verdict on sufficiency grounds, as we draw all reasonable inferences in the government's favor and defer to the jury when there are competing inferences." *United States v. Gatto*, 986 F.3d 104, 113 (2d Cir. 2021) (internal quotation marks and citation omitted). "A challenge to the sufficiency of the evidence fails if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "We review the sufficiency of the evidence *de novo*." *Id.* (citation omitted).

### A. Materiality

Gramins first argues that no rational jury could have concluded that his misrepresentations were material. *See Gramins I*, 939 F.3d at 440 (noting that materiality is an element of both securities fraud and wire fraud). Irrespective of the type of fraud at issue, the different

---

[2] When, as here, "a conspiracy has multiple objectives, a conviction will be upheld so long as evidence is sufficient to show that an appellant agreed to accomplish at least one of the criminal objectives." *United States v. Desnoyers*, 637 F.3d 105, 110 (2d Cir. 2011); *see also Griffin v. United States*, 502 U.S. 46, 56–57 (1991). Because we conclude that the evidence was sufficient for a rational jury to convict Gramins of conspiracy to commit securities fraud, we do not address his arguments regarding wire fraud.

3

"specifications of the materiality inquiry target the same question: would the misrepresentation actually *matter* in a *meaningful way* to a rational decisionmaker?" *United States v. Calderon*, 944 F.3d 72, 86 (2d Cir. 2019) (emphases in original). When considering a securities transaction, a misstatement is material if there is "a substantial likelihood that a reasonable investor would find the . . . misrepresentation important in making an investment decision." *United States v. Vilar*, 729 F.3d 62, 89 (2d Cir. 2013). In other words, there must be "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *United States v. Landesman*, 17 F.4th 298, 341 (2d Cir. 2021) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). "Determination of materiality under the securities laws is a mixed question of law and fact that the Supreme Court has identified as especially well suited for jury determination." *Gramins I*, 939 F.3d at 446 (internal quotation marks and citation omitted); *see also Washington v. Recuenco*, 548 U.S. 212, 219 (2006) (citing *Neder v. United States*, 527 U.S. 1, 20 (1999)) (similar for wire fraud).

Our decision in *Gramins I* describes a portion of the evidence as to materiality in this case. We observed there that "[t]he government sought to prove materiality in part with testimony from four of Nomura's counterparties[.]" *Gramins I*, 939 F.3d at 440. "Before the jury, these counterparties described the [trades], in which Gramins or one of his associates had lied to them, and explained how those lies had impacted their investment decisions." *Id.*; *see also id.* at 440–41, 445–46. After summarizing the government's evidence at trial, we concluded that our decisions in *United States v. Litvak*, 808 F.3d 160, 175–76 (2d Cir. 2015) ("*Litvak I*") and *United States v. Litvak*, 889 F.3d 56, 66 (2d Cir. 2018) ("*Litvak II*")

> establish that this sort of testimony from a broker-dealer's counterparties can constitute sufficient evidence of materiality to support a conviction for securities fraud. In other words, a rational jury could have found, on the basis of counterparty

4

> testimony that the defendants' misrepresentations were important to those counterparties' investment decisions, that those misrepresentations were material. The district court therefore properly applied our holdings in *Litvak I* and *II* in denying Gramins's motion for judgment of acquittal.

*Gramins I*, 939 F.3d at 446–47 (internal citations omitted). Although Gramins argues that this reasoning is dicta, we find it persuasive and thus decline to depart from it here.

Gramins also contends that to satisfy the materiality requirement, the government was required to prove that "absent [his] misrepresentation[s]," the counterparties "would have declined to transact," not simply that they might have "negotiate[d] a better price." Appellant's Reply Br. 3. We rejected a virtually identical argument—that "misstatements cannot, as a matter of law, be material" if they "affect[ ] only the negotiation over price"—in *Litvak II*, 889 F.3d at 67. As we explained in that opinion,

> [w]hen the broker-dealer seeks a profit for its role in procuring and selling a security desired by a buyer, the profit becomes part of the price paid by the buyer. The value of the security may be the most important factor governing the decision to buy, but the price must be considered in determining whether the purchase is deemed profitable. The broker-dealer's profit is part of the price and lies about it can be found by a jury to significantly alter the total mix of information available.

*Id.* (internal quotation marks, footnote, and alterations omitted); *see also Litvak I*, 808 F.3d at 175–78 (rejecting argument that such misrepresentations are immaterial as a matter of law). Because Gramins's argument conflicts with this binding precedent, the district court correctly rejected it.

### B. Mens Rea

Next, Gramins challenges the sufficiency of the evidence as to his mental state. To sustain Gramins's conspiracy conviction, the government had to prove that Gramins "willfully and knowingly became a member of the conspiracy, with intent to further its illegal purposes—that is, with the intent to commit the object of the charged conspiracy." *United States v. Archer*, 977

5

F.3d 181, 190 (2d Cir. 2020) (internal quotation marks omitted). In other words, the government was required to show that Gramins had "at least the degree of criminal intent necessary for the substantive offense itself[.]" *Id.* (quoting *United States v. Feola*, 420 U.S. 671, 686 (1975)). To establish intent for securities fraud, Gramins must have "acted willfully and knowingly and with the intent to defraud." *Landesman*, 17 F.4th at 321 (quoting *United States v. Rosen*, 409 F.3d 535, 549 (2d Cir. 2005)). While the parties dispute whether "willfulness" in this case demands proof of Gramins's awareness of the general unlawfulness of his conduct under the securities laws as opposed to merely the general wrongfulness of his conduct, we need not address this question, as the evidence was sufficient to sustain the conviction even under the more demanding standard.

On Gramins's view, willfulness in the securities fraud context requires "a realization on the defendant's part that he was doing a wrongful act under the securities laws, in a situation where the knowingly wrongful act involved a significant risk of effecting the violation that has occurred." *United States v. McGinn*, 787 F.3d 116, 124 (2d Cir. 2015) (quoting *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005).[3] At trial, the government introduced several pieces of evidence from which a rational jury could conclude that Gramins harbored the requisite intent for securities fraud under this standard. To begin, the government elicited testimony from three former Nomura junior traders, all of whom admitted that they engaged in deceptive practices by lying in negotiations over securities transactions and took measures to hide their deception from counterparties. The government also introduced Nomura's compliance manuals—which Gramins certified he had read—that specifically reference Rule 10b-5, the SEC rule that prohibits "manipulative,

---

[3] The district court's jury instruction on willfulness tracked the definition outlined in *Cassese*, in conformity with the standard for which Gramins now advocates. *See* Appellant's App'x 911-12; *see also id.* at 822 (instructing that "[w]illfully" refers to "the intent to do something the law forbids; that is, with a bad purpose to disobey or disregard the law").

6

fraudulent, and deceptive practices in connection with either the purchase or sale of securities." Gov't App'x 153 (General Compliance Manual); *id.* at 187 (Fixed Income Compliance Manual). In addition, the record reflected that Gramins's FINRA training and licensure exams necessitated his review of the rules and regulations that prohibit deceptive conduct in securities trading. Furthermore, Jonathan Raiff, Nomura's Head of Global Markets for the Americas, testified that both before and after the Litvak indictment, Nomura's policies disallowed traders from making material misrepresentations in the course of a principal-to-principal transaction.

When viewed in the light most favorable to the government, this evidence was sufficient to permit a rational jury to determine that Gramins knew his misrepresentations were wrongful and carried with them a significant risk of running afoul of the securities laws. *See Cassese*, 428 F.3d at 98. To be sure, the record contains evidence from which the jury might have arrived at the contrary conclusion that Gramins lacked the requisite intent to commit securities fraud. But on a sufficiency challenge, such fact issues fall well within the purview of the jury. *United States v. Coppola*, 671 F.3d 220, 239 (2d Cir. 2012) ("[T]he task of choosing among permissible competing inferences is for the jury, not a reviewing court." (citation omitted)). Just as we stated in the context of the jury's consideration of the evidence bearing on materiality, both sides "had the right" to advance competing theories of intent, "[a]nd the jury had the right to accept whichever theory . . . it found more persuasive in light of the testimony and other evidence before it at trial." *Gramins I*, 939 F.3d at 446.

Gramins also contends that the evidence was insufficient to establish the existence of a co-conspirator who shared the intent to commit securities fraud. *See United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010) ("In order to convict a defendant of the crime of conspiracy, the government must show that two or more persons entered into a joint enterprise for an unlawful

7

purpose, with awareness of its general nature and extent."). To forward this argument, Gramins urges the Court to set aside the evidence of intent that pre-dates the *Litvak* indictment because the junior traders "each unequivocally testified that they had no knowledge their pre-*Litvak* conduct was unlawful." Appellant's Br. 40. Even if the Court were to isolate the single post-*Litvak* trade, there is sufficient evidence to support Gramins's participation in a conspiracy with Michael Romanelli ("Romanelli"), the Nomura salesperson who worked with Gramins on this trade.

Gramins insists that his communications with Romanelli both over the phone and on instant message concerning this trade are reflective of their efforts to comply with the law as they understood it post-*Litvak*. But the jury was under no obligation to accept Gramins's argument concerning his good faith and, instead, could reasonably have understood Gramins's and Romanelli's strategizing as reflecting a joint effort to manipulate a counterparty's bid while shielding their deceptive conduct. *See Coppola*, 671 F.3d at 239. To this point, Gramins transmitted an instant message to Romanelli and a buy-side trader affirmatively misrepresenting a seller's offer. Shortly thereafter, Gramins and Romanelli spoke on the phone about how best to "maximize the situation," despite their concerns that the buyer may "get suspicious." Appellant's App'x 1203-04. And, since Romanelli was a securities professional privy to the same compliance and training materials as others at Nomura, the jury was entitled to draw the reasonable inference that he was aware that this deception posed a risk of violating the securities laws.

**II.     Jury Instructions**

Finally, Gramins argues that his conviction should be vacated and remanded for a new trial because the district court did not adequately instruct the jury regarding the intent-to-harm requirement for wire fraud. We "review a claim of error in jury instructions *de novo*, reversing only where, viewing the charge as a whole, there was a prejudicial error." *United States v. Moseley*,

8

980 F.3d 9, 20 (2d Cir. 2020). A jury instruction is "erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Silver*, 864 F.3d 102, 118 (2d Cir. 2017). When, as here, "a defendant did not object to the instruction," we review it only for "plain error." *United States v. Prado*, 815 F.3d 93, 100 (2d Cir. 2016). Under that standard, the defendant must show:

> (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant's] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* (citation omitted).

Gramins has not shown that the district court plainly erred in its wire-fraud instruction. His primary contention is that the district court failed to instruct the jury that intent to harm, in addition to intent to deceive, is a required element of wire fraud. *See Gatto*, 986 F.3d at 113 (explaining that to convict a defendant of wire fraud "there must be 'proof that defendants possessed a fraudulent intent,'" meaning that "defendants must either intend to harm their victim or contemplate that their victim may be harmed" (quoting *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987)); *see also United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) ("Because an intent to deceive alone is insufficient to sustain a wire fraud conviction, 'misrepresentations amounting only to a deceit must be coupled with a contemplated harm to the victim.'" (internal alterations and citation omitted)). In its wire-fraud instruction, the district court stated that "intent to defraud" had "the same meaning" as set forth in its securities-fraud instruction. Appellant's App'x 825.

9

In its securities-fraud instruction, the district court stated that "intent to defraud" means to "deliberately use deception to induce another to act to his detriment." *Id.* at 822.[4]

This was not "clear or obvious" error. *Prado*, 815 F.3d at 100. By instructing the jury that the government was required to prove beyond a reasonable doubt that Gramins and his co-conspirators intended "to induce [their counterparties] to act to [their] detriment," the district court either captured the intent-to-harm requirement or arguably did so. Appellant's App'x at 822. Whether there is any difference between "intend[ing] to harm [a] victim or contemplat[ing] that [a] victim may be harmed," *see Gatto*, 986 F.3d at 113, and intending to deceive the victim into acting detrimentally to its interests is, at minimum, "subject to reasonable dispute," *Prado*, 815 F.3d at 100. Thus, Gramins has failed to satisfy the plain-error standard.

Gramins also takes issue with the district court's instruction that "[a] defendant's honest belief that ultimately no one would lose money, or even that everyone would make a profit, is not a defense to securities fraud," Appellant's App'x 882, without expressly stating that this is not the case for wire fraud. Gramins argues that because the wire-fraud instruction directed the jury to refer to the securities-fraud instruction's intent-to-defraud element, the failure to clarify the no-ultimate-harm charge risked confusing the jury as to the intent-to-harm element of wire fraud. We disagree. As the instruction itself makes clear, the district court expressly limited the no-ultimate-harm charge instruction to *securities* fraud. Therefore, the district court did not fail to adequately instruct the jury concerning *wire* fraud.

\*   \*   \*

---

[4] The district court was not required to have so instructed the jury on securities fraud. *See Litvak I*, 808 F.3d at 179 ("'[I]ntent to harm' is not a component of the scienter element of securities fraud under Section 10(b)").

We have considered Gramins's remaining arguments and conclude they lack merit. We therefore **AFFIRM** the district court's judgment.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk of Court

11